UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARCOS APONTE**

v.  Case No. 8:09-cv-02541-EAK-EAJ,
    8:09-cr-00148-EAK-EAJ

**UNITED STATES OF AMERICA**

_____/

## ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT AN ILLLEGAL SENTENCE PURSUANT TO 28 U.S.C. § 2255

THIS CAUSE is before the Court on Marcos Aponte's timely-filed motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255. (Cv-1).[1] Aponte challenges the validity of his sentence for possessing child pornography and attempting to transfer obscene material to a minor. The government argues the motion to vacate is without merit because the sentence is within the statutory limits.

A review of the record demonstrates that the Motion to Vacate, Set Aside, or Correct Sentence, must be DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

Beginning on May 30, 2008, Aponte began an on-line chat with an undercover officer who was posing as a fourteen-year-old boy. Throughout the numerous chats, Aponte engaged in sexually explicit conversations regarding Aponte's sexual activity

---

[1] Docket references to 8:09-cr-00148-EAK-EAJ are denoted herein as "Cr-__" and docket references to 8:09-cv-02541-EAK-EAJ are denoted herein as "Cv-__".

with a thirteen-year-old boy, the size of Aponte's penis, and Aponte's affinity for oral sex. During the chats with the undercover officer posing as a minor, Aponte agreed to send images of child pornography in exchange for a video of young boys in a shower. Aponte also used a webcam in his chats, which Aponte used to display a portable, external hard drive to the same undercover officer. The external hard drive contained images of child pornography. Additionally, Aponte used the webcam to show images of his stripping naked, exposing his penis, and masturbating while chatting with the undercover officer who was posing as a fourteen-year-old boy. Law enforcement officers eventually seized Aponte's laptop and the external hard drive, which contained approximately sixty images of child pornography and numerous child pornography videos.

On April 27, 2009, Aponte plead guilty pursuant to a plea agreement to possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count One), and attempting to transfer obscene material to a minor, in violation of 18 U.S.C. § 1470 (Count Two). (Cr-25). Aponte was sentenced to 120 months incarceration for Count One. For Count Two, Aponte was sentenced to 68 months incarceration to run concurrently with the 120 month sentence for Count One, except that one month was to run consecutive with the sentence for Count One. Aponte's total sentence of incarceration is 121 months. (Cr- 40). In addition, Aponte was sentenced to a life term of supervised release.[2] *Id.*

---

[2] Under 18 U.S.C. §§ 2252(a)(4)(B) and 1470, the maximum term of imprisonment is ten years for Counts One and Two. According to the sentencing guideline provisions, an offense level of 32 and a criminal history category of I, the range of imprisonment is 121-151 months; therefore, Aponte's incarceration sentence is at the low-end of the sentencing guidelines. (Cr-43 at 69, 212-233). The Eleventh Circuit has recognized that

2

Subsequent to Aponte's guilty plea and sentencing, Aponte filed the present motion to vacate his sentence.

## DISCUSSION

Aponte claims his sentence violates his Eighth Amendment rights, because the length of imprisonment and the life term of supervision is cruel and unusual punishment. (Cv-1). Aponte contends that he suffers from Asperger's Syndrome, and that imprisonment with his mental condition and separation from his family is cruel and unusual punishment. (Cv-1). Further, Aponte claims that his incarceration "worsen[s] [his] disability," and prevents his receiving the proper treatment and therapies to address his "specific disability." (Cv-1). Aponte claims that the life term of supervised release is cruel and unusual, because he "did not meet or touched [sic] or hurt a minor or anyone else [and] did not intend to commit a crime." (Cv-1).

The government contends that Aponte's sentence of incarceration and life term of supervision does not violate the Eighth Amendment's prohibition on cruel and unusual punishment because the sentence is within the statutory limits and is not grossly disproportionate to the crimes. (Cr-7 at 4, 5). Further, the government argues that Aponte's separation from his family is not a meritorious claim because all prisoners are separated from their families. (Cv-7 at 2 n.2).

In response to Aponte's concerns regarding his disability, the government asserts that special conditions were imposed for the treatment for Aponte's mental health condition during his incarceration; that Aponte has been housed with other inmates and

---

when a district court imposes a sentence within the sentencing guideline range, the sentence is considered reasonable. *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006).

3

works as a steam fitter at Fort Dix without any disciplinary problems; and Aponte has received treatment for his medical needs during his incarceration. (Cv-7 at 8, 11 n. 8, and 13).

Additionally, the government challenges, as incredulous, Aponte's objection to the imposition of a life term of supervised release as cruel and unusual punishment because Aponte "never hurt anyone." (Cv-7 at 14). The government has cited Congress' findings on the effects of child pornography as proof of the physical and psychological harm caused to children, even when the offender does not meet or touch a child, because the pornography is used to further the exploitation and victimization of children. (Cv-7 at 15).

Furthermore, the government asserts that Aponte's discussion of sexual acts that he wanted to consummate with the "child" and masturbating in front of his webcam to a "child" is the type of activity that is used to groom a "child" for sexual activity. (Cv-7 at 16). Consequently, the government maintains that Aponte's imprisonment and life term of supervised release is not grossly disproportionate; thus, the sentence does not violate Aponte's Eighth Amendment rights.

At the sentencing hearing, Aponte offered the expert testimony of Dr. Needham, a psychologist. Dr. Needham concluded that Aponte has Asperger's Syndrome after a one and-one-half hour clinical interview with Aponte; a review of Aponte's general records; and discussion with Aponte's Family. (Cr-43 at 76). According to Dr. Needham, Aponte was merely "playing doctor." Dr. Needham stated that the chats between Aponte and the "child" were filled with "curiosity and wonder" as the result of Aponte's social disability. (Cr-43 at 102). Dr. Needham stated that Aponte preferred relationships on the Internet

4

because there was no physical contact. Individuals who have Asperger's Syndrome have difficulty in forming interpersonal relationships. (Cr-43 at 94).

Dr. Needham claimed that despite allegedly having Asperger's Syndrome, Aponte thrived in the Navy because he understands "explicit rules," whereas Aponte does not understand society's "implicit rules." (Cr-43 at 95). Furthermore, Dr. Needham did not consider Aponte to be a sex offender because he does not exhibit an anti-social personality; "he didn't harm anyone, [and] [h]e was masturbating in his room." (Cr-43 at 105). In addition, Dr. Needham believes that distributing, viewing, and possessing child pornography images, as well as chatting to a "fourteen-year-old boy to engage in sexual acts" does not mean that Aponte is a sex offender because Aponte and the "child" are on the same level and "it was a fantasy." (Cr-43 at 105-06).

However, Dr. Needham admitted that what she had seen on television was her only experience with Internet communications between an adult and an undercover officer who was posing as a child, where the adult discusses what sexual acts the adult would like to consummate with the "child." (Cr-43 at 112-13). Dr. Needham stated that she has worked with sexual offenders before, but the Internet was not an element in those cases. (Cr-43 at 113). Furthermore, Dr. Needham stated that Aponte's sister, a speech pathologist, administered the special adult Asperger's assessment, and it was rare for Dr. Needham to receive assessments from family members. (Cr-24 at 125-126). Additionally, Dr. Needham did not evaluate Aponte until two weeks before sentencing, and until Aponte's sister made the inquiry, none of Aponte's previous doctors diagnosed Asperger's Syndrome. (Cr-24 at 134-36).

5

In response to Dr. Needham's testimony at sentencing, the government presented the testimony of Lt. Michael Baute, a task force agent with the Bureau of Immigration and Customs Enforcement. (Cr-43 at 183). According to Lt. Baute, Aponte's large collection of child pornography and on-line chats were "very, very comparable" to other collections of material in other sex offender cases. (Cr-43 at 184). Furthermore, Baute testified that he had a case that involved a defendant with Asperger's Syndrome, and that defendant would have met with the child if the child's mother had not intervened. (Cr-43 at 185). Upon examination of Aponte's computer, Baute found various pictures of Aponte with underage boys. The images showed the boys smoking marijuana, a boy's buttocks, and boys viewing pornography on a computer screen. (Cr-43 at 186-87).

After hearing the testimony and reviewing the evidence, the Court noted Aponte's voluntarily admitting he communicated with someone who Aponte thought was a fourteen-year-old boy; Aponte's bragging about sexual activity with a thirteen-year-old boy; and Aponte's possessing numerous child pornography images and videos. (Cr-43 at 208). In addition, the Court also recognized that Aponte could have been charged with offenses that had a minimum ten-year imprisonment to a life term of imprisonment. Id. The Court stated that the purpose of the penalties is to prevent victimization of children. (Cr-43 at 209).

After reviewing the above factors, the Court sentenced Aponte and included special conditions for Aponte to receive "mental health treatment program [and] a mental health treatment program specializing in sexual offender treatment." (Cr-43 at 230).

## MERITS

### GROUND ONE

Aponte argues that his sentence violates his Eighth Amendment right to be from cruel and unusual punishment, because he has been "diagnosed" with Asperger's Syndrome. Aponte claims that he should receive treatment for his mental condition under the care and support of his family. (Cv-1 at 5).

As a general rule, a sentence that is within the statutory limits is not subject to a constitutional challenge. *Williams v. Alabama*, 403 F.2d 1019, 1020 (5th Cir. Ala. 1968).[3] Thus, a term of imprisonment is not cruel and unusual punishment if it is within the statutory limits. *Castle v. United States*, 399 F.2d 642, 652 (5th Cir. 1968). Furthermore, the severity of a sentence within the statutory limits may not be reviewed, because "it raises no constitutional or statutory question." *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir. 1983).

As to a possible disproportionality claim, the Supreme Court has stated that the Eighth Amendment does not guarantee proportionality; rather, the Eighth Amendment's cruel and unusual punishment clause pertains to the methods of punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965, 979 (1991). Additionally, the Eleventh Circuit has held that a sentence imposed within the statutory limits is neither "excessive nor cruel and unusual under the Eighth Amendment," nor disproportionate. *United States v. Johnson*, 451 F.3d 1239, 1243-1244 (11th Cir. 2006). In regard to Aponte's concern about his mental disability, the Court requested that Aponte receive treatment. (Cr-43 at 212). Consequently, Aponte is not entitled to relief on ground one.

---

[3] Former Fifth Circuit decisions are controlling in the Eleventh Circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981).

7

## GROUND TWO

Aponte claims his life term of supervised release should be vacated because "he did not hurt a minor or anyone else." (Cv-1 at 6). According to 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release from five years to life for Count One. For Count Two, the Court may impose a term of supervised release of not more than three years. Aponte has the burden of proof to show that the imposition of a life term of supervised release is grossly disproportionate to the crime committed. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006); *see also United States v. Raad*, 406 F.3d 1332 (11th Cir. 2005).

As stated above, provided that the sentence imposed is within the statutory limitations, it is "neither excessive nor cruel and unusual under the Eighth Amendment." *Johnson*, 451 F.3d at 1243. Since Aponte's life term of supervision is within the statutory limits, the sentence is not excessive under the Eighth Amendment. *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005). Additionally, Congress has recognized the importance of supervised release as a method of helping former incarcerated individuals transition into the community and fulfill long-term rehabilitative goals. *Moriarty*, 429 F.3d at 1025 (citing *United States v. Johnson*, 529 U.S. 53, 59, (2000); and H.R. Conf. Rep. No. 108-66, at 49-50 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 684)).

Aponte states that he did not harm anyone; however, as the Court noted at sentencing, it is recognized by Congress and by the government that the proliferation of child pornography does harm children. (Cr-43, at 209-211). Through studies and victim letters, the Court acknowledged the lasting psychological and emotional effects on the

children who are depicted in the images. *Id.* Furthermore, Aponte recognized that he has committed a crime and voluntarily pleaded guilty to both counts. A life term of supervised release is within the statutory limits; therefore, the sentence is reasonable and Aponte's claim on ground two is "insulated from a section 2255 review." *Kett v. United States*, 722 F.2d 687 (11th Cir. 1984).

## REPLY

On July 7, 2010, Aponte filed a "Reply to Government's Response In Opposition To Motion To Vacate Sentence." (Cv-12). Aponte asserts that he should receive consideration for his special conditions and his service in the United States Navy. *Id.* Aponte also claims that the Court should vacate his sentence because the Court wrongfully applied the sentencing guidelines. (Cv-12 at 11). Further, Aponte requests that he should receive permission from the court to file a direct appeal of his sentence. (Cv-12 at 12).

At sentencing, the Court did recognize Aponte's medical conditions and his service in the Navy. (Cr-43 at 208). Additionally, Aponte's health is not subject to a claim of cruel and unusual punishment, when the Court considers the defendant's health and the sentence is below the statutory maximum. *United States v. Prince*, 709 F.2d 39 (11th Cir. 1983); *see also United States v. Grene*, 455 F.2d 376 (5th Cir. 1972). As previously stated, a sentence that is within the statutory limits is not cruel and unusual punishment. *Castle v. United States*, 399 F.2d 642 (5th Cir. 1968); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006).

Aponte's claim that the Court wrongfully applied the statutory guidelines is without merit. The Court acknowledged Aponte's arguments and factors in sections 18

U.S.C. §§ 3351, 3553 prior to imposing Aponte's sentence within the statutory limit and at the low-end of the Guidelines. (Cr-43 at 211). The Eleventh Circuit acknowledges that the Sentencing Guidelines are not mandatory; however, the Eleventh Circuit also recognizes "the use of Guidelines remains central to the sentencing"; a sentence within the Guidelines range is reasonable; and "it is sufficient for the district court to acknowledge that it has considered the § 3553 factors." *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009) (citing *United States v. Talley*, 431 F.3d 484, 787-88 (11th Cir. 2005)); *United States v. Duhart*, 341 Fed. Appx. 510, 512 (11th Cir. 2009).

Further, Aponte's request for a direct appeal is without merit, because Aponte's plea agreement contains a waiver of a right to appeal and right to collaterally challenge the sentence on any ground, including the applicable guideline range pursuant to the United States Sentencing Guidelines, except "(a) the ground that the sentence exceeds Defendant's applicable guideline range as determined by the Court; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment." (Cr-3 at 11-12). At the change of plea hearing, the assigned magistrate judge confirmed that Aponte read, consulted with counsel, understood, and signed Waiver of Indictment, The Notice Regarding an Entry of a Plea Agreement, and The Plea Agreement.

> THE COURT: [...] Are those your signatures, sir?
>
> APONTE: Yes, Your Honor.
>
> [...]
>
> THE COURT: Before you signed them, did you have a chance to go over them with your attorney and ask and questions?

APONTE: Yes, Your Honor.

THE COURT: Okay. And do you feel that you understand what's in all those documents?

APONTE: Yes, Your Honor.

Transcript of Change of Plea Hearing, Cr-25 at 23-24.

A further review of the transcript reveals that Aponte understood the waiver of right to appeal as read by the Prosecutor. Additionally, the magistrate judge inquired if Aponte signed the waiver knowingly, if anyone had promised or threatened Aponte to enter his plea, and whether Aponte understood the maximum sentence that could be imposed by his plea.

THE COURT: **Do you have any disagreement** with [the waiver]—with those matters?

APONTE: **No, Your Honor.**

THE COURT: **Did you talk with your attorney** specifically about this part of the waiver?

APONTE: **Yes, Your Honor.**

Transcript of Change of Plea Hearing, Cr-25 at 26-28 (emphasis added).

THE COURT: **Do you make the waiver of appeal knowingly?**

APONTE: **Yes, Your Honor.**

THE COURT: Does this plea agreement, sir, contain all the promises or understandings that have led you to plead guilty?

APONTE: Yes, Your Honor.

THE COURT: **Is there anything anyone has promised you which is not in the written plea agreement?**

APONTE: **No, Your Honor.**

11

> THE COURT: **Has anybody threatened you in any way to get you to plead guilty?**
>
> APONTE: **No, Your Honor.**

Transcript of Change of Plea Hearing, Cr-25 at 27 (emphasis added).

> THE COURT: **The penalties in the event of conviction for these two charges in the information: Count 1 carries the maximum sentence of up to ten years in jail, a fine of up to $250,000, and a term of supervised release of at least five years up to life. Count 2 carries a maximum sentence of up to ten years in jail, a fine of up to $250,000, and a term of supervised release of three years.** There's also a special assessment for each count, for a total of $200. **Do you understand that?**
>
> APONTE: **Yes, Your Honor.**

Transcript of Change of Plea Hearing, Cr-25 at 29-30 (emphasis added).

Therefore, Aponte's claim to the right of appeal "for any sentence that involved jail time" is unwarranted. (Cv-12 at 12). Prior to Aponte's signing and accepting the plea agreement, Aponte acknowledged that he had committed a crime and understood the penalties he would face by pleading guilty. Consequently, Aponte's arguments in the reply are unpersuasive.

Accordingly, Aponte's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 is **DENIED**. The Clerk is directed to enter judgment against Aponte and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Aponte is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must

first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Aponte "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Aponte has not made the requisite showing in these circumstances. Finally, because Aponte is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Chambers, in Tampa, Florida, this 15th day of JULY, 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

AUSA: Amanda C. Kaiser
Pro se: Marcos Aponte